In re CHURCHFIELD MANAGEMENT & INVESTMENT CORPORATION, Debtor.

WINSTON & STRAWN, as successor-in-interest to Daniel M. Pelliccioni, Trustee, Plaintiff,

v.

Kathryn KELLY, Defendant.

WINSTON & STRAWN, as successor-in-interest to Daniel M. Pelliccioni, Trustee, Plaintiff,

v.

Lee DOMINGUEZ, JGC Trust #2, Thomas J. Connelly, et al., Defendants.

Bankruptcy No. 84 B 07409.
Adv. Nos. 86 A 0409, 86 A 0613.

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 16, 1990.

---

Thomas J. McCarthy, Jenner & Block, Chicago, Ill., for Winston & Strawn.

George W. Gessler, Gessler, Flynn, Laswell, Fleischmann, Hughes & Socol, Ltd., Chicago, Ill., for Lee A. Dominguez.

Gregory A. Adamski, Chicago, Ill., for Kathryn Kelly and JGC Trust # 2.

Thomas J. Connelly, Walworth, Wis., pro se.

## MEMORANDUM OPINION ON DEFENDANTS' MOTIONS TO DISMISS

JACK B. SCHMETTERER, Bankruptcy Judge.

Defendants Kathryn Kelly ("Kelly"), JGC Trust # 2 ("JGC Trust") and Thomas J. Connelly ("Connelly") (collectively, the "Defendants") have moved to dismiss the adversary complaints brought against them by plaintiff Winston & Strawn ("W & S") (the "Adversary Complaints") (the "Motions"). The Adversary Complaints seek to avoid certain transfers to the Defendants

as preferences and fraudulent conveyances under § 547(b) and § 548 of the U.S. Bankruptcy Code. The Motions assert that this Court lacks subject matter jurisdiction over these avoidance actions and that W & S lacks standing to pursue them. W & S is plaintiff in the Adversary proceedings as successor-in-interest to the Chapter 11 Trustee pursuant to a settlement agreement in a prior action. Following hearing held August 6, 1990, and having considered the matters presented thereat and the pleadings and argument of counsel, for the reasons stated below the Motions are denied.

## UNDISPUTED FACTS

The applicable facts are found in the Complaints and record of proceedings of these two Adversary cases and related bankruptcy proceeding before this Court.

On or about June 12, 1984, Churchfield Management & Investment Corporation ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Debtor operated its business as a debtor-in-possession until August 26, 1986.

In April 1986, Debtor filed this preference action against Kelly, alleging that Debtor had transferred $60,000 to Kelly within ninety days prior to Debtor's Chapter 11 filing. On or about the same time, Debtor also filed a preference claim against JGC Trust, a trust established for the family of Thomas Connelly and the owner of 68,000 of 80,000 shares of Debtor's stock. Debtor sought to recover $50,000 allegedly transferred by Debtor to JGC Trust within twelve months prior to the bankruptcy filing. Finally, Debtor sought to avoid as a fraudulent conveyance a payment of $102,000 which was made by Debtor to Thomas Connelly himself.

After an extended hearing on the motions of W & S and the U.S. Trustee to remove existing management and appoint a trustee, on August 26, 1986 this Court ordered the U.S. Trustee to appoint a trustee. Daniel M. Pelliccioni was then appointed as the Trustee for Debtor ("Trustee"). In February and March of 1987, the Trustee intervened in the Adversary cases.

On June 9, 1988, following heavy litigation the Trustee entered into a settlement agreement with W & S and other parties in a District Court class action suit entitled *Churchfield Management & Investment Corp., et al. v. Winston & Strawn, et al.,* 84 C 10904 (N.D.Ill.) ("Settlement Agreement"). Under the Settlement Agreement, the Trustee agreed, *inter alia,* to transfer to W & S all of the Trustee's rights, title and interest in the estate's claims in exchange for W & S's substantial monetary contribution to two funds, one for direct distribution to the estate's creditors and the other for payment of the estate's administrative expenses. In particular, the Trustee transferred to W & S the right to avoid and recover preferential transfers, along with the right to prosecute and collect upon claims for fraudulent conveyances. The Trustee agreed to appoint W & S as representative of the estate for the sole purpose of pursuing the causes of action assigned to W & S in the Settlement Agreement. The Settlement Agreement also recited that the Bankruptcy Court would "retain jurisdiction in order to implement and enforce the terms of" the transfer of preference and fraudulent conveyance claims.

On December 2, 1987, this Court entered an Order approving the Settlement Agreement (the "Bankruptcy Court Order"). In approving the Settlement Agreement, the Court observed that payments from all sources including W & S would result in payments totalling approximately $10,520,000 for benefit of persons who were creditors of this estate. Without the settlement, the estate would have continued to be involved in costly and time-consuming litigation which the estate might not have been able to fund and whose results were uncertain. The Court further observed that the Settlement Agreement would result in "significant benefits to the holders of Money Market Mortgages and limited partnership units in partnerships syndicated by [Debtor], to a degree rarely found in bankruptcy proceedings." The Bankruptcy Court Order provided that the matters and issues being settled were core proceedings

and were within the Court's discretion to approve.

On September 7, 1988, the District Court for the Northern District of Illinois, which had presided over the class action litigation, also approved the Settlement Agreement as being "valid and enforceable," noting as this Court had that the Settlement Agreement was "fair, reasonable, and adequate."

The proposed terms of the Settlement Agreement had been incorporated into the Second Amended Plan of Reorganization, which was confirmed by this Court on January 8, 1988 (the "Plan"). The Plan provided that Debtor's interest in certain causes of action would be assigned to W & S and that W & S was thereby appointed as a representative of the estate for the sole purpose of pursuing the assigned causes of action. The Plan also provided that the Court would retain jurisdiction to "hear and determine any and all pending adversary proceedings...."

Accordingly, on March 17, 1989 W & S substituted for Trustee as Plaintiff in the instant Adversary Complaints against the Defendants. In their Motions to Dismiss, Defendants argue that because W & S is not the debtor and the estate will not realize any recovery, this Court has no independent basis for jurisdiction. The Defendants further assert that W & S lacks standing to pursue the Adversary Complaints because only the Trustee or debtor has the authority to maintain actions to recover preferences and fraudulent conveyances. It is clear that W & S is seeking recovery on claims that it was assigned and designated as representative of the estate to recover. It is also clear that W & S is entitled to retain and will not owe to the estate any recovery achieved in these cases.

## DISCUSSION

### A. Standards on Motions to Dismiss

In order for Defendants to prevail on their motions to dismiss, it must clearly appear from the pleadings that W & S can prove no set of facts in support of its claims which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Swanson v. Wabash, Inc.*, 577 F.Supp. 1308 (N.D.Ill.1983). The issue is not whether W & S will ultimately prevail, but whether W & S has pleaded a cause of action sufficient to entitle it to offer evidence in support of its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court must consider both pleaded facts and reasonable inferences drawn from pleaded facts, in a light most favorable to the plaintiff when reviewing a defendant's motion to dismiss. *Mescall v. Burrus*, 603 F.2d 1266, 1269 (7th Cir.1979); *Corcoran v. Chicago Park District*, 875 F.2d 609 (7th Cir. 1989); *Morgan v. DeRobertis*, 582 F.Supp. 271, 273 (N.D.Ill.1984).

### B. Jurisdiction Under 28 U.S.C. § 1334

The subject matter jurisdiction of United States District Courts over bankruptcy matters is set forth in 28 U.S.C. § 1334.[1] This section provides that the district court has exclusive jurisdiction over all cases under Title 11, and nonexclusive jurisdiction over all proceedings arising under Title 11, arising in a case under Title 11, or "related to" a case under Title 11. The threshold inquiry in this case is whether the Adversary Complaints fall within the bankruptcy jurisdiction outlined in § 1334(b).

The Adversary Complaints clearly arise under Title 11. The Fifth Circuit has explained that "Congress used the phrase

---

1. The district court is authorized to refer all matters within the jurisdictional grant of 28 U.S.C. § 1334 to the bankruptcy judges for the district. 28 U.S.C. § 157(a). In this jurisdiction all such matters have been referred pursuant to the General Order of the United States District Court for the Northern District of Illinois of July 10, 1984. *See* Local District Rule 2.33. For purposes of determining whether a matter falls within the bankruptcy jurisdiction outlined in § 1334, as opposed to a bankruptcy judge's authority to enter final judgments and orders, it is not necessary to distinguish between the "arising in," "arising under" and "related to" categories. *In re Wood*, 825 F.2d 90, 93 (5th Cir.1987). *See also In re Fietz*, 852 F.2d 455, 457 (9th Cir.1988).

'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *In re Wood*, 825 F.2d 90, 96 (5th Cir.1987). W & S asserts a right of recovery against the Defendants for preferences and fraudulent conveyances. These asserted causes of action are based upon statutory rights specifically created by the Bankruptcy Code, namely § 547 and § 548. In addition, §§ 157(b)(2)(F) and (H) of the Code explicitly provide that proceedings to determine, avoid or recover preferences and fraudulent conveyances are core proceedings. §§ 157(b)(2)(F, H).

Furthermore, courts have consistently upheld post-confirmation jurisdiction to recover preferential payments where the plan of reorganization provided for retention of jurisdiction. *See In re Centennial Indus.*, 12 B.R. 99 (Bankr.S.D.N.Y.1981); *In re Sweetwater*, 884 F.2d 1323, 1324 (10th Cir. 1989). This Court retained its core jurisdiction to complete these adversary proceedings in the Bankruptcy Court Order which provided that "[t]he matters and issues being settled [in the Settlement Agreement] are 'core proceedings.'" Core jurisdiction to complete the adversary proceedings was also retained by confirmation of the Plan which provided that after entry of the order of confirmation, the Court would retain jurisdiction to "hear and determine any and all pending adversary proceedings or contested matters." Thus, this Court must maintain its jurisdiction in order to implement the provisions of the Plan. Prosecution of these causes of action post-confirmation is an element of administration of this bankruptcy estate as provided for in the Plan. *See also In re Tennessee Wheel & Rubber Co.*, 64 B.R. 721, 727 (Bankr.M. D.Tenn.1986) (in which the court reasoned that it had core jurisdiction over certain avoidance actions because "[j]urisdiction to complete the[ ] adversary proceedings was retained by confirmation of the debtor's plan").

The Defendants argue that this Court does not have subject matter jurisdiction over these proceedings because W & S is merely a purchaser of Debtor's rights in the proceedings. However, the court in *In re Xonics, Inc.*, 813 F.2d 127 (7th Cir.1987) clarified the test for core jurisdiction in the following manner:

> The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets. It extends no further than its purpose. That two creditors have an internecine conflict is of no moment, once all disputes about their stakes in the bankrupt's property have been resolved. The unrelated dispute among two creditors ... would not be a 'core' proceeding under § 157(b)(2); *it is the relation of dispute to estate, and not of party to estate, that establishes jurisdiction. Id.*, 813 F.2d at 131. (Emphasis supplied.)

In *Xonics*, the debtor's estate had abandoned its interest in certain account receivables upon confirmation of the plan of reorganization, leaving only a dispute among claimants regarding the funds. The Seventh Circuit reasoned that once the property was abandoned, the bankruptcy court no longer had jurisdiction to determine the competing interests of the creditors in the estate property.

In contrast, Debtor here did not abandon its interest in the preference and fraudulent conveyance claims, but rather assigned those interests for valuable consideration to the estate as approved in the confirmed Plan and by the Orders of both this Court and the District Court. Since Debtor was the party who brought the original complaints, obviously Debtor asserted an interest in the property as opposed to abandoning it. The Trustee succeeded to Debtor's rights. Pursuant to the Settlement Agreement, it is now W & S rather than Debtor who is entitled to Debtor's rights in these actions. However, W & S's entitlement to any portion of the proceeds is entirely dependent upon a determination that Debtor could have recovered the preferential and fraudulent transfers. *See Heritage Bremen Bank & Trust Co. v. Chicago Cement, et al.*, No. 89 C 5154, 1990 WL 168950 (N.D.Ill. Oct. 23, 1990) (Plunkett, J.) (in which the District Court found that the bankruptcy court had core jurisdiction to determine the validity, extent and priority

of liens among four non-debtor parties to certain proceeds of the debtor, reasoning that one party's entitlement to the proceeds was "entirely dependent upon a determination that the debtor was the owner of the [property at issue] and that [the party] had a valid, perfected and enforceable security interest in the debtor's inventory"). Such determination is clearly within the core jurisdiction of this Court.

▪ Finally, even if the underlying bankruptcy case is ultimately closed, an event which may be imminent, this Court will continue to have subject matter jurisdiction over the Adversary proceedings. Even after a bankruptcy case is closed, bankruptcy jurisdiction continues to exist to hear matters arising under Title 11. *In re GWF Investment, Ltd.*, 85 B.R. 771, 780 (Bankr. S.D.Ohio 1988) ("this court finds a clear Congressional intent that bankruptcy jurisdiction continues for the purpose of deciding proceedings 'arising under' title 11, despite the closing of the bankruptcy case").[2]

### C. *Standing*

Defendants' contention that W & S does not have standing to maintain the adversary proceedings because it is neither a trustee nor a debtor in possession, is completely contradicted by the clear statutory language of § 1123(b)(3)(B) of the Bankruptcy Code and by established caselaw interpreting that section. § 1123(b)(3)(B) provides that a plan may:

(3) provide for ...

(B) the retention and enforcement by the debtor, by the trustee, *or by a representative of the estate appointed for such purpose,* of any ... claim or interest [of the debtor or the estate]. (Emphasis added.)

▪ It is a well-settled principle that avoidance powers may be assigned to someone other than the debtor or trustee pursuant to a plan of reorganization. *In re Kroh Bros. Development Co.*, 101 B.R.

1000, 1005 (W.D.Mo.1989) ("[r]ecent caselaw ... unequivocally holds that a provision of a plan authorizing someone other than a trustee or debtor to conduct adversary proceedings to recover transfers under ... § 547 ... is not inconsistent with any applicable provisions of the Code and may be included in a debtor's plan...."); *In re NTG Indus., Inc.*, 20 BCD 1645, 118 B.R. 606 (Bankr.N.D.Ill.1990) (Squires, J.); *In re Sweetwater*, 884 F.2d 1323, 1327 (10th Cir.1989).

▪ Under § 1123(b)(3)(B), a party who is neither the debtor nor the trustee but who seeks to enforce a claim must establish two elements: (1) that it has been appointed; and, (2) that it is a representative of the estate. *In re Amarex, Inc. (Temex)*, 96 B.R. 330, 334 (W.D.Okla.1989). As to the first element, neither § 1123 nor applicable authorities set forth any particular procedures necessary for an appointment to be valid. *Id.* In concluding that a party has been appointed for § 1123 purposes, most courts have relied upon a provision in a plan of reorganization which expressly confers upon a particular party the right to bring certain avoidance actions. *Temex*, 96 B.R. at 334; *Sweetwater*, 884 F.2d at 1326; *In re Mako, Inc.*, 120 B.R. 203 (Bankr.E.D.Okla.1990). This Court follows that approach.

The Plan specifically and unequivocally appoints W & S as a "representative of Debtor's estate" "solely for the purpose of pursuing [the Adversary proceedings]." *See Mako*, 120 B.R. at 209 ("the retention provision of § 1123(b)(3)(B) requires specific and unequivocal language of reservation"). After interested parties had an opportunity to object, the Plan in the Churchfield bankruptcy proceeding was voted upon and approved by creditors, and was confirmed by this Court. In addition, the District Court also approved the appointment of W & S as a representative of the estate in the District Court Order. Thus,

---

**2.** Even if the adversary proceedings were merely "related to" the underlying bankruptcy case, certain circumstances might still warrant the bankruptcy court to retain jurisdiction over the adversary proceedings in the event the bankruptcy case is dismissed. *See In re Stardust Inn, Inc.*, 70 B.R. 888 (Bankr.E.D.Pa.1987); *Hudak v. Woods*, 91 B.R. 718 (W.D.Pa.1988); *GWF*, 85 B.R. at 780.

W & S was indeed appointed to pursue these Adversary proceedings pursuant to § 1123(b)(3)(B). *See Sweetwater*, 884 F.2d at 1326 (in which the court found that the procedure of confirming a plan was "sufficient to appoint [a representative] for the purpose of enforcing [preference] claims").

As to the second element of § 1123(b)(3)(B), most courts have adopted a case-by-case approach to determine whether a particular party seeking to enforce a claim is a "representative of the estate." *Temex*, 96 B.R. at 334; *Sweetwater*, 884 F.2d at 1326; *Mako*, 120 B.R. at 209; *In re Tennessee Wheel & Rubber Co.*, 64 B.R. 721, 725 (Bankr.M.D.Tenn.1986). The primary consideration is whether recovery on the action benefits the estate, in particular the unsecured creditors. *Id.* The Defendants in effect argue that recovery by W & S in the adversary proceedings will not benefit the estate or the unsecured creditors as required under § 1123(b)(3)(B). This Court disagrees.

In support of their Motions to Dismiss, each of the Defendants rely on cases which are inapplicable to the present proceeding. Defendants rely on cases which neither address the authority of an Adversary plaintiff appointed as a representative of the estate under § 1123, nor involve claims which were brought under the Bankruptcy Code.

The key question here, although not discussed by Defendants, is whether the benefit envisioned by § 1123(b)(3)(B) encompasses the past benefits to the estate which were achieved through the Settlement Agreement. Because the Adversary proceedings can only result in a future recovery to W & S rather than to the estate, does that mean there will be no "benefit" under § 1123(b)(3)(B)?

Courts have broadly interpreted the requirement of benefit under § 1123(b)(3)(B). *Temex*, 96 B.R. at 334 ('[t]he benefit to the unsecured creditors has been defined broadly...."); *Tennessee*, 64 B.R. at 725; *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279 (Bankr.S.D.N.Y.1990). It is undisputed that the appointment of W & S as representative of the estate greatly benefit-ted the estate and its unsecured creditors at the time. This is evidenced by provisions of the Plan, the Bankruptcy Court Order and the District Court Order approving the appointment. The appointment of W & S was part of a settlement which resulted in a total of $10,520,000.00 in total consideration being paid for the direct or indirect benefit of the creditors in the related bankruptcy proceeding. W & S contributed a large portion of that sum. The large distribution to creditors of this estate could not have taken place but for the Settlement Agreement which *inter alia* led to the appointment of W & S as representative of the estate.

There is nothing in the Bankruptcy Code or precedent which indicates that the "benefit" to the estate and its creditors cannot occur prior to the actual recovery on a claim for § 1123(b)(3)(B) purposes. In addition, should W & S be unable to use the authorities assigned to it, W & S might have a claim for partial failure of consideration and might assert a right to recover some of the settlement proceeds paid by it. Even if the latter possibility were not meaningful, however, its confirmed right to pursue these claims stems from a present and continuing benefit to the estate.

Courts have held that so long as the unsecured creditors receive some benefit from the recovery of a preference, even if it is not an actual increase in the amount the creditors will receive, § 1123(b)(3)(B) will still apply. *In re Southern Indus. Banking Corp.*, 59 B.R. 638, 641 (Bankr.E.D.Tenn.1986); *Tennessee Wheel*, 64 B.R. at 725, citing *Centennial Industries, Inc. v. NCR Corp.*, 12 B.R. 99 (Bankr.S.D.N.Y. 1981) (in which the court found that the likelihood that preference recoveries would increase the probability of success of reorganization was a sufficient benefit to creditors even though the distribution percentage to unsecured creditors was fixed by the plan and would not be increased by preference recoveries), and *J.E. Jennings, Inc. v. Carter*, 46 B.R. 167 (Bankr.E.D.Pa.1985) (in which the court permitted the debtor to pursue preference actions post-confirmation although there was no indication that

recovery would affect the dividend to unsecured claimholders).

In *Tennessee Wheel,* the debtor granted a lender security interests in all pre- and post-petition assets of the debtor which included preferential recoveries, in exchange for the lender extending a line of credit to the debtor which funded the immediate cash requirements of the plan of reorganization. Thus, the direct benefit of any preferential recoveries by the debtor would go to the secured lender rather than to the unsecured creditors.

Although it was the lender rather than the creditors who would realize any direct benefit from the preference actions, the *Tennessee Wheel* court still found that the benefit to the unsecured creditors was enough to support the exercise of avoidance powers under § 1123(b)(3)(B). The court reasoned that:

> [a]bsent the post-confirmation line of credit advanced by [the bank], unsecured claimholders would have received no distribution. The retention of the power to pursue avoidance actions coupled with the grant of a security interest in the debtor's post-confirmation assets was the consideration for [the bank's] ... advances to th[e] debtor. No reorganization was possible without new advances from [the bank]. *Tennessee Wheel,* 64 B.R. at 726.

Such reasoning is directly applicable to this Court's determination of benefit to Debtor's unsecured creditors. Absent consideration paid by W & S partly in exchange for its appointment as representative of the estate, it is equally unlikely that either a distribution to the unsecured creditors, or a successful reorganization, would have taken place.

The court in *In re Amarex, Inc.,* 74 B.R. 378 (Bankr.W.D.Okla.1987) emphasized the above reasoning even more forcefully. In *Amarex,* the court found that the successor by merger to reorganized debtor could maintain preferential actions originally filed by the debtor. The confirmed plan had provided that in consideration for the merger, the unsecured creditors of the debtor would receive common stock of the

successor corporation in satisfaction of their claims.

In response to objections of defendants in adversary proceedings before it, the *Amarex* court first observed that the plan of reorganization had made clear to creditors that preference claims would pass to the successor upon confirmation. *Amarex,* 74 B.R. at 381. Although preference claims were for the benefit of the creditors, had the creditors wished the claims to be prosecuted in some other fashion, the time to be heard was at confirmation. *Id.* Further, even if creditors had given up some interest in the claims, they had received something in exchange, namely shares of the successor corporation's stock. *Id.* Thus, the court in *Amarex* concluded that appointment of a representative had indeed resulted in benefit to the estate. The court emphasized that the successor had paid valuable consideration for the claims and in return had received a binding confirmation order "having all the finality of a judgment."

> To now seek to deprive [the successor] of what it bargained for and received would be an unconscionable deprivation of vested rights. If creditors or other interested parties wished to object to that result the time to be heard was at confirmation. *Id.* at 381.

Similarly, this Court must conclude that W & S is a proper party to maintain the Adversary Complaints. Debtor's unsecured creditors received the benefit of every valuable consideration paid by W & S to the estate. Further, to conclude otherwise would be to deprive W & S of its bargained-for rights and might allow it a present claim of partial failure of consideration against the estate. Such a result would contradict the terms of the confirmed Plan and interfere with the administration of the estate.

Thus, W & S has satisfied the two requirements under § 1123(b)(3)(B), namely that it was appointed and that it is a representative of the estate in the Adversary proceedings. Consequently, W & S has standing to pursue the Adversary Complaints.

## CONCLUSION

Accordingly, the Defendants' Motions to Dismiss the Adversary Complaints are by separate order each denied.