**In re I. APPEL CORPORATION, Debtor.**

**Norman Katz and Stephen Katz, Appellants,**

v.

**I.A. Alliance Corp., et al., Appellee.**

**No. 03 Civ. 2355(VM).**

United States District Court, S.D. New York.

Oct. 20, 2003.

---

### DECISION AND ORDER

MARRERO, District Judge.

### I. INTRODUCTION

Appellants Norman Katz and Stephen Katz, the defendants in several litigations brought by a reorganized debtor and its assignee, appeal a decision from the bankruptcy court granting the debtor's motion to reopen its plan of reorganization. The debtor sought to amend its schedule of assets and liabilities so as to list the claims at issue in the litigations. Because the bankruptcy court did not abuse its discretion in granting the motion to reopen the case, this Court affirms the ruling of the bankruptcy court.

### II. FACTS

I. Appel Corporation (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York in April 1997. The bankruptcy court approved the Debtor's Disclosure Statement in February 1998 and the First Amended Plan of Reorganization in May 1998. The bankruptcy court issued a final decree and closed the case in November 1999.

Norman Katz was an officer and 50 percent shareholder of the Debtor from 1976 until 1996. His son Stephen Katz was also

an officer of the Debtor. In July 1996 Norman Katz sold his shares of the Debtor to Herbert Feinberg ("Feinberg"), the other 50 percent shareholder.

In January 1999 Feinberg, as assignee of the Debtor, brought claims in this Court against Stephen Katz alleging conversion and misappropriation of assets of the Debtor over a span of many years before 1996.[1] In November 1999, before the bankruptcy case was closed, the Debtor filed an arbitration action against Norman Katz regarding Katz's alleged obligation to pay litigation expenses under a purchase agreement between Norman Katz, Feinberg, and the Debtor.[2] In 2001 Feinberg, again acting as assignee of the Debtor, brought another action in this Court against Norman and Stephen Katz asserting claims for misappropriations that caused harm to the Debtor's creditors.[3]

The Debtor's Schedule of Assets and Liabilities in the bankruptcy case, filed in April 1997, did not list any of these claims against the Katzes. Schedule B, entitled "Personal Property," required the Debtor to list at item 20 "contingent and unliquidated claims of every nature." The Debtor identified claims against two other parties but did not list any claims or potential claims against the Katzes.

The Debtor's First Amended Disclosure Statement in the bankruptcy case, filed in January 1998, stated that:

The Debtor's special litigation counsel ... is investigating certain pre-petition acts or omissions of Katz which may give rise to claims by the Debtor against [Norman] Katz and his son Steven [sic]. Mr. Katz and his son were responsible pre-petition for inventory control and accounting for inventory of the Debtor.

(First Amended Disclosure Statement of Debtor at 42, attached as Tab 2, Exhibit B of Appendix to Appellants' Initial Brief ("Disclosure Statement").)

The Katzes moved to dismiss all three actions on the grounds that the Debtor had failed to preserve the claims because it had not listed them on its Schedule of Assets and Liabilities. In September 2002, an arbitration panel granted Norman Katz's motion to strike the arbitration on the grounds that the Debtor lacked standing to pursue the claim because it had failed to identify it in its schedule of assets.[4]

In December 2002, the Debtor moved to reopen the Chapter 11 bankruptcy pursuant to 11 U.S.C. § 350(b)[5] and Rule 5010 of the Federal Rules of Bankruptcy Procedure.[6] The Debtor sought to amend its Schedule of Assets and Liabilities to identify specifically its claims against the Katzes.

The bankruptcy court (Drain, J.) granted the Debtor's motion in January 2003. The Katzes appeal from that ruling.

1. *See Feinberg v. Katz,* No. 99 Civ. 45 (filed Jan. 1999). In 2001 Feinberg submitted an amended complaint that added Norman Katz as a defendant.

2. *See I. Appel Corp. v. Katz,* AAA No. 13 181 01022 99 (2002) (Katz and Van Ingen, Arbs.) (attached as Tab 2, Exhibit G of Appendix to Appellants' Initial Brief) (the "Appel Arb.").

3. *See Feinberg v. Katz,* No. 01 Civ. 2739 (filed 2001).

4. *See I. Appel Corp.,* AAA No. 13 181 01022 99, at 6.

5. 11 U.S.C. § 350(b) provides: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

6. Fed. R. Bankr.P. 5010 provides in part: "A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code."

## III. DISCUSSION

### A. STANDARD OF REVIEW

 A district court has jurisdiction to hear appeals of final judgments, orders or decrees from the bankruptcy court under 28 U.S.C. § 158(a)(1). This Court reviews an equitable determination by the bankruptcy court for abuse of discretion. *See Mendelsohn v. Ozer*, 241 B.R. 503, 506 (E.D.N.Y.1997). A "bankruptcy court's decision whether to reopen debtor's case is committed to the sound discretion of the bankruptcy court." *Horizon Aviation of Virginia, Inc. v. Alexander*, 296 B.R. 380, 382 (E.D.Va.2003); *see also* Lawrence King, ed., 9 COLLIER ON BANKRUPTCY § 5010.01 (15th ed.2003). Accordingly, the Court will review the decision at issue here for abuse of discretion.

### B. THE BANKRUPTCY COURT'S RULING

 Under 11 U.S.C. § 1123(b)(3), a plan of reorganization "may ... provide for (A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or (B) the retention and enforcement by the debtor ... of any such claim or interest." The confirmation of a bankruptcy plan of reorganization must be accorded res judicata effect.[7] Consequently, the confirmation of a plan of reorganization prevents the subsequent assertion of any claim not preserved in the plan as required by § 1123(b)(3).[8]

#### 1. *Identification of Claims*

 The Katzes argue that the Debtor's confirmed plan did not sufficiently pre-serve any of the three claims that it or Feinberg are now bringing against them. They argue that the bankruptcy court erred in granting the Debtor's motion to reopen the bankruptcy case to amend the Schedule of Assets and Liabilities by itemizing the Debtor's claims against the Katzes. The Debtor responds that the Plan and the First Amended Disclosure Statement adequately preserved its right to litigate the claims against the Katzes. The Debtor argues that the bankruptcy court properly exercised its discretion in granting its motion to reopen the case and amend the schedules.

Section 8.02(ii) of the Debtor's First Amended Plan of Reorganization provides:

In order to fund the payments to creditors under this Plan, reorganized I. Appel shall retain all rights to any claims or causes of actions which I. Appel and/or its creditors held as of the Petition Date or which arose or could arise during the Bankruptcy Case, whether pursuant to the recovery provisions of Sections 542 through 554 of the Bankruptcy Code or under applicable federal or state law, except under Section 547 of the Bankruptcy Code.

(Debtor's First Amended Plan of Reorganization at 34, attached as Tab 2, Exhibit C of Appendix to Appellants' Initial Brief (the "Plan").)

As noted above, the Debtor's First Amended Disclosure Statement reveals that the Debtor's special litigation counsel was "investigating certain pre-petition acts or omissions" of Norman Katz "which may give rise to claims by the Debtor" against the Katzes. (Disclosure Statement at 42.)

---

7. *See In re Worldwide Direct, Inc.*, 280 B.R. 819, 822 (Bankr.D.Del.2002).

8. *See id.; see also D & K Props. Crystal Lake v. Mut. Life Ins. Co. of New York*, 112 F.3d 257, 259 (7th Cir.1997) (explaining that "confirmed plans of reorganization are binding on all parties, and issues that could have been raised pertaining to such plans are barred by res judicata") (quoting *In re Heritage Hotel P'ship I*, 160 B.R. 374, 377 (9th Cir. BAP 1993)).

The Disclosure Statement indicated that "Mr. Katz and his son were responsible pre-petition for inventory control and accounting for inventory of the Debtor." (Disclosure Statement at 42.)

The Katzes argue that once a plan of reorganization has been confirmed, a claim belonging to the debtor may be brought only "if those *specific* causes of action are properly preserved in a plan of reorganization." (Appellants' Initial Brief at 17 (emphasis added).) The Katzes rely on a line of cases holding that a general clause in a plan of reorganization reserving to the debtor all potential claims is not sufficient to preserve a claim and avoid the preclusive effect of the confirmed plan, and instead that a plan must specifically reserve particular claims.[9] In *In re Kelley*, for example, the Ninth Circuit's Bankruptcy

Appellate Panel explained that "[i]f a confirmed plan expressly reserves the right to litigate a *specific* cause of action after confirmation, then res judicata does not apply." [10] The court compared that situation to one in which the debtor "fails to mention the cause of action in either his schedules, disclosure statement, or plan, [and thus would] be precluded from affirming it postconfirmation." [11]

The Debtor responds with a second line of cases that reject the specificity requirements described in *Kelley* and conclude instead that a more general reservation of claims in a plan or disclosure statement is sufficient to avoid res judicata.[12] In *In re Ampace*, for example, the bankruptcy court examined a plan of reorganization containing a general reservation clause preserving all avoidance actions.[13] The

---

9. *See, e.g., Browning v. Levy*, 283 F.3d 761, 774 (6th Cir.2002) ("a general reservation of rights does not suffice to avoid res judicata"); *D & K Props. Crystal Lake v. Mut. Life Ins. Co. of New York*, 112 F.3d 257, 261 (7th Cir.1997) ("A blanket reservation that seeks to reserve all causes of action reserves nothing."); *In re Kelley*, 199 B.R. 698, 704 (9th Cir. BAP 1996) ("[e]ven a blanket reservation by the debtor reserving 'all causes of action which the debtor may choose to institute' has been held insufficient to prevent the application of res judicata to a specific action.") (quoting *In re Hooker Investments*, 162 B.R. 426, 433 (Bankr.S.D.N.Y.1993)); *In re American Preferred Prescription, Inc.*, 266 B.R. 273, 277 (E.D.N.Y.2000) (explaining that many courts have held that to avoid res judicata, "the plan must expressly reserve the right to pursue *that particular claim* post-confirmation and that a blanket reservation allowing for an objection to *any claim* is insufficient") (emphasis in original).

10. *In re Kelley*, 199 B.R. at 704 (emphasis added).

11. *Id.*

12. *See, e.g., In re Associated Vintage Group, Inc.*, 283 B.R. 549, 563–64 (9th Cir. BAP 2002) (rejecting exact specificity requirement of *Kelley* and instead adopting more flexible,

case-by-case approach to determining degree of specificity required in plan of reorganization); *In re Worldwide Direct, Inc.*, 280 B.R. 819, 823 (Bankr.D.Del.2002) (rejecting specificity requirement and allowing more general reservation of claims because "it is simply impractical and unwarranted to require a debtor to provide in excruciating detail all of the possible defenses or objections which the estate may have to every single claim being treated in the plan"); *In re Ampace Corp.*, 279 B.R. 145, 156–62 (Bankr.D.Del.2002) (detailing arguments from competing lines of cases and then holding that "a subsequent action is *not* barred by a prior confirmation hearing under the doctrine of *res judicata* where the disclosure statement and plan contain a *general* reservation of the right to pursue preference actions post-confirmation.") (emphasis in original); *In re Weidel*, 208 B.R. 848, 851–54 (Bankr.M.D.N.C.1997) (enforcing general reservation clause in reorganization plan after reasoning that requiring specific reservation of claims would produce serious delay in approval of plan because debtor would have to carefully examine each potential claim and decide whether to pursue it before submitting a final plan of reorganization).

13. *See Ampace*, 279 B.R. at 148. The reservation clause stated "[a]ll Avoidance Actions, all Claims relating to Post–Petition transactions

court declined to follow the cases requiring a plan to specifically reserve a particular claim in order to avoid the application of res judicata to that claim. The court reasoned that it is "impractical and unnecessary" to require a disclosure statement or plan or reorganization to list with specificity every outstanding claim before the plan can be confirmed, and explained that allowing a debtor to include a general reservation of the right to litigate claims post-confirmation expedites the process of confirming a plan of reorganization.[14] Among the considerations that weighed in the court's decision was that in large bankruptcies the investigation and decision to pursue every possible claim of a debtor can take several years, and that all relevant parties in the case before it had an opportunity to review and object to the plan of reorganization and disclosure statement before they were confirmed.[15] On these grounds, the court concluded that the parties should be bound by the terms of the plan.[16]

■ This court finds the *Ampace* line of cases more persuasive. It is neither reasonable nor practical to expect a debtor to identify in its plan of reorganization or disclosure schedules every outstanding claim it intends to pursue with the degree of specificity that the Katzes would require. As other courts reaching this conclusion have noted, mandating a specific description of every claim the debtor intends to pursue could entail months or years of investigation and a corresponding delay in the confirmation of the plan of reorganization.[17] The delay in confirmation of the plan would either delay recovery for creditors or would induce the debtor to abandon valid claims in order to expedite the confirmation process. Neither result is desirable, as the purpose of the Bankruptcy Code is to "achieve the maximum distribution in the minimum time with all creditors of the same class sharing ratably."[18]

### 2. Adequacy of Notice

■ The Katzes argue that the Plan of Reorganization and the Disclosure Statement failed to provide adequate information to creditors about the claims against the Katzes. They rely on 11 U.S.C. § 1125(a), which requires a disclosure statement to provide:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor ... to make an informed judgment about the plan....

The Katzes argue that "nothing in the Disclosure Statement reflected an intention to *retain and preserve* any causes of action against" them. (Appellants' Initial Brief at 25 (emphasis added).) The Katzes correctly note that the reference to possible claims against them in the Disclosure Statement did not provide an estimate of

---

under Section 549 of the Bankruptcy Code, all transfers recoverable under Section 550 of the Bankruptcy Code, all causes of action against any Person on account of indebtedness and any other causes of action in favor of the Debtors are hereby preserved and retained for enforcement subsequent to the Effective Date exclusively by Ampace Liquidating Trust." *Id.*

14. *Id.* at 159.

15. *See id.* at 159–60.

16. *Id.*

17. *See, e.g., In re Weidel*, 208 B.R. at 853; *In re Amarex, Inc.*, 74 B.R. 378, 380 (Bankr. W.D.Okla.1987).

18. *See Amarex*, 74 B.R. at 381.

the value of these potential claims, and they argue that this failure must prevent the Debtor from subsequently bringing any causes of action. They rely on a decision from this District in *Kunica v. St. Jean Fin., Inc.*, in which the court examined a disclosure statement that "merely indicated that [the debtor] would retain certain unenumerated and unvalued causes of action against various unnamed third parties." [19] The court in *Kunica* held that "[t]hese vague references to the Claims are insufficient, do not disclose the substance, nature and value of the Claims against the Defendants and do not override the contrary disclosures made in the Schedules that no claims exist." [20]

The situation in the case at bar is readily distinguishable from that in *Kunica*. Although, as in *Kunica*, the Disclosure Statement here failed to provide an estimated value of claims, unlike in *Kunica* the Disclosure Statement named the specific targets of the potential claims. Furthermore, also unlike in *Kunica*, the Disclosure Statement here did not contain a statement that no claims existed. To the contrary, the Disclosure Statement indicated that the Debtor's counsel was investigating potential claims against the Katzes. In the context of a disclosure statement in a bankruptcy proceeding, the meaning and implication of such a declaration cannot be reasonably construed as other than an expression of reservation of rights to later assert on behalf of the Debtor any claim that may arise from the investigation.

It is possible that the Debtor's Plan of Reorganization and Disclosure Schedule could have been more specific than they were in identifying outstanding claims.

But that is not the issue before the Court. Rather, the question is whether the Plan and the Disclosure Statement as written provided adequate notice to enable creditors to make an informed judgment about the Plan. The Plan indicated that the Debtor was reserving all causes of action, and the Disclosure Statement indicated that the Debtor was investigating potential claims against the Katzes. The combination of the blanket reservation of claims in the Plan and the reference to potential claims against the Katzes in the Disclosure Statement was sufficient to provide adequate notice to the creditors, the Katzes, the trustee, and the bankruptcy court that the Debtor had potential outstanding claims against the Katzes. On the basis of this disclosure, any party who desired more information before voting on the Plan could have inquired further with the Debtor about such claims.

### 3. *Abuse of Discretion Standard*

■ In granting the Debtor's motion to reopen the case, the bankruptcy court compared the competing lines of cases discussing the necessary level of specificity required to preserve a claim and determined the better view to be that the level of specificity that the Katzes advocated should not be required. (*See* Transcript of January 14, 2003 Hearing on *In re I. Appel Corp.* at 41–43, attached as Tab 3 of Appendix to Appellants' Initial Brief ("Transcript").) When competing, reasonable interpretations of an issue of discretion exist, neither of which is binding on a court, it cannot be held an abuse of discretion for a court to adopt either view.[21]

---

**19.** 233 B.R. 46, 56 (S.D.N.Y.1999).

**20.** *Id.*

**21.** *See Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir.2001) (explaining that

court abuses its discretion when "(1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—

The bankruptcy court determined that the Plan and Disclosure Statement provided adequate notice to the creditors and the Katzes about the existence of the Debtor's claims against the Katzes. It concluded that creditors would "not be surprised by the fact that the reorganized debtors have brought these causes of action, and that they have brought them on their behalf and not on behalf of the creditors." (Transcript at 44.) The court also determined that "the Katzes were well aware that they were potential targets for a lawsuit." (*Id.* at 47.) The bankruptcy court had discretion to make these determinations. Its decision on these issues was grounded on a reasonable application of relevant authority.

■ Under the Bankruptcy Code, a bankruptcy court has discretion to reopen a closed case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Although the statute does not provide any specific criteria to guide the determination of whether to reopen closed cases, courts typically examine the benefit to the debtor, the prejudice to the would-be defendant in the litigation, and the benefit to the creditors.[22]

Here, the benefit to the Debtor and its assignee, Feinberg, are quite evident. Reopening the case to amend the schedules will enable the Debtor to continue to pursue its claims against the Katzes and avoid res judicata. It is true that if the Debtor is allowed to amend its schedules to include the claims against the Katzes, and even if the Debtor succeeds in recovering on those claims, the Debtor's creditors will not receive any additional payout. But, as

the bankruptcy court found, that does not necessarily mean that there is no benefit to the creditors from reopening the case.

The bankruptcy court essentially ruled that although the creditors would not directly benefit from the reopening of the case, they had already benefitted from the Debtor's ability to bring the claims against the Katzes because "the creditors were ... aware of the causes of action, and that was part of their bargain under the plan." (Transcript at 47.) The court reasoned that when the creditors approved the Plan, "they bargained to have the reorganized debtors retain these causes of action." (*Id.* at 46.)

The Katzes argue that because the creditors will not benefit now from the reopening of the case, that factor weighs against reopening. They rely on *In re Koch,* in which the bankruptcy court vacated its own order reopening a case.[23] The *Koch* court determined that the creditors would not benefit from reopening a case to allow the debtor to amend his schedule of assets to list property that was the subject of litigation.[24] The court reasoned that the debtor's apparent lack of good faith in failing to list the particular asset on his schedules when the creditors were considering the plan of reorganization denied the creditors the opportunity to object to the debtor's discharge from bankruptcy.[25] But for the reasons explained above, that situation does not exist here. As the bankruptcy court here concluded, "the creditors were ... aware of the causes of action...." (Transcript at 47.) Here, as the Debtor argues, the creditors do not receive a second benefit from reopening

cannot be located within the range of permissible decisions").

22. *See In re Tarrer,* 273 B.R. 724, 732 (Bankr. N.D.Ga.2001); *In re Koch,* 229 B.R. 78, 85–86 (Bankr.E.D.N.Y.1999).

23. *See In re Koch,* 229 B.R. at 88.

24. *See id.* at 79–80, 86–88.

25. *Id.* at 86–87.

the case; they have already benefitted from the Debtor's ability to maintain the causes of action against the Katzes.

Finally, the bankruptcy court considered the detriment to the Katzes from reopening the case. It determined the detriment to be "fairly incurred." (Transcript at 46.) The court found the Katzes were "well aware that they were potential targets for a lawsuit." (*Id.* at 46–47.) Moreover, the court determined that the only detriment to the Katzes from granting the motion to reopen the case would be the removal of the argument of judicial estoppel from the Katzes' potential array of defenses to the claims. (*Id.* at 39.) Although this defense, if valid, would likely reduce the time and expense of litigation for the Katzes, the Katzes are still able to defend the actions on the merits or any other argument they might raise.[26]

The bankruptcy court balanced the benefit to the Debtor, the benefit to the creditors, and the detriment to the Katzes and concluded that the equities tilted in favor of reopening the case. (*Id.* at 45–47.) The court's decision did not misapply the law and reached a result sufficiently supported by articulated reasons and authority. There was no abuse of discretion.

### 4. *Collateral Attack*

■ The Katzes argue that the Debtor's motion to reopen the bankruptcy plan was an impermissible collateral attack on the September 2002 decision of the arbitration panel in the Appel Arbitration, which granted Katz' motion to strike the Debtor's claim on the grounds that the Debtor lacked standing to bring the claim.[27] The arbitration panel reasoned that because the Debtor failed to list the claim on its schedule of assets, the claim remained part of the bankruptcy estate and therefore the Debtor lacked standing to bring the claim on its own behalf. (*See Appel Arb.* at 6.)

The Debtor argues that because the arbitration panel granted Katz's motion to strike based on standing grounds, the Debtor is free to refile the claim once the standing defect is cured. It is well settled that "a dismissal for lack of standing does not have preclusive effect."[28] The Katzes do not dispute this proposition. Rather, they argue that the arbitration panel's ruling did not rely solely on standing, and that the decision was actually based on the merits of the Debtor's claim. (Appellants' Reply Brief, at 13.) The Katzes misread the arbitration panel's decision. The arbitration panel determined that the Debtor was required to list the claim against Katz on its schedule of assets, that it failed to do so, and therefore lacked standing to bring the claim.[29]

## III. *ORDER*

For the reasons discussed above, it is hereby

ORDERED that the decision of the bankruptcy court to grant the motion of I. Appel Corporation (the "Debtor") to reopen its bankruptcy case so as to amend

---

26. *See In re Tarrer*, 273 B.R. at 732 (observing that "if the Court allows the Debtors to reopen their case and amend their schedules, the Objecting Parties are likely to lose their judicial estoppel defense.... [But] all is not lost, as the Objecting Parties could still prevail on the merits.")

27. *See Appel Arb.*, AAA No. 13 181 01022 99.

28. *Ackoff–Ortega v. Windswept Pac. Entm't Co., Inc.*, 120 F.Supp.2d 273, 279 (S.D.N.Y. 2000); *see also Media Techs. Licensing, L.L.C. v. Upper Deck Co.*, 334 F.3d 1366, 1369–70 (2003) (explaining that dismissal for lack of standing is jurisdictional matter and is not ruling on merits).

29. *See Appel Arb.*, AAA No. 13 181 01022 99, at 6.

the Debtor's schedule of assets is AF-FIRMED.

The Clerk of Court is directed to close this case.

**SO ORDERED.**