**In re AMPACE CORPORATION and Ampace Freightlines, Inc., Debtors.**

**Howard Cohen, as Liquidating Trustee for the Estates of Ampace Corporation and Ampace Freightlines, Inc., Plaintiff,**

v.

**TIC Financial Systems, Defendant.**

**Bankruptcy No. 98–2772(PJW).
Adversary No. A–00–2033.**

United States Bankruptcy Court, D. Delaware.

May 3, 2002.

Joseph Grey, Stevens & Lee, Wilmington, DE, William R. O'Bryan, Jr., Candice L. Reed, Nashville, TN, for Comdata Network, Inc. f/k/a TIC Financial Systems.

Steven K. Kortanek, Denise Seastone Kraft, Stephanie A. Fox, Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, Wilmington, DE, for Howard Cohen, as Liquidating Trustee.

## MEMORANDUM OPINION

PETER J. WALSH, Chief Judge.

Before the court is the motion (Doc. # 13) of Comdata Network, Inc. f/k/a TIC Financial Systems ("Comdata" or "Defendant") for summary judgment. I will deny the motion for the reasons discussed below.

## BACKGROUND

Ampace Corporation and Ampace Freightlines, Inc. (collectively, "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on December 15, 1998 ("Petition Date"). On December 3, 1999 ("Confirmation Date"), Debtors' Fourth Amended Joint Plan of Reorganization ("Plan") was confirmed. (*See* Confirmation Order (Doc. # 429, Case No. 98–2772).) The "Effective Date" of the Plan, defined therein as "eleven (11) days after the Confirmation Date" (Plan § 1.46), was December 14, 1999.

On the Effective Date, pursuant to the terms of the Plan, the Ampace Liquidating Trust ("Trust") was formed to hold and liquidate Debtors' Non–Operating Assets for the benefit of Debtors' creditors. (Plan § 1.11.)[1] The Plan provides that on the Effective Date, "all of the Assets ex-

cept for the Calhoun Operating Assets shall be transferred.to the Ampace Liquidating Trust free and clear of all Claims and liens and contractually imposed restrictions, except for any lien provided for in this Plan and in the Ampace Liquidating Trust." (*Id.* at § 8.2.2.) The Plan further provides that "[t]he Liquidating Trustee of Ampace Liquidating Trust, which will be selected by the Creditors' Committee and subject to approval pursuant to the terms of the Plan, will analyze and prosecute all Avoidance Actions and other causes of action and will liquidate the Non–Operating Assets." (*Id.* at § 2.1.) Pursuant to the terms of the liquidating trust agreement executed in connection with the Plan ("Liquidating Trust Agreement"), Howard Cohen ("Plaintiff") was selected as the Liquidating Trustee ("Trustee") of the Ampace Liquidating Trust ("Trust").

In addition to providing Plaintiff, as Trustee, with sole responsibility over the liquidation of the Non–Operating Assets, the Plan also provides Plaintiff with both the sole responsibility and discretion over the pursuit of Avoidance Actions (*id.* at §§ 8.2.4[2], 8.8[3]), and the exclusive right to object to the allowance of any claims asserted against Debtors' estates (collectively, the "Estate") (*id.* at § 2.1). Relevant to the instant action, section 14.1 of the Plan provides:

*All Avoidance Actions,* all Claims relating to Post–Petition transactions under Section 549 of the Bankruptcy Code, *all transfers recoverable under Section 550 of the Bankruptcy Code,* all causes of

---

1. "Non–Operating Assets" are defined section 1.63 of the Plan as "all of the Debtors' Assets except for the Calhoun Operating Assets."

2. Section 8.2.4 of the Plan provides: "The responsibilities of the Liquidating Trustee under the Liquidating Trust Agreement and this Plan shall include... (v) prosecuting any cause of action of the Debtors' estates including Avoidance Actions."

3. Section 8.8 of the Plan provides: "In the sole discretion of the Liquidating Trustee, any potential Avoidance Actions may be pursued by informal demand and/or by the commencement of litigation. The proceeds of such Avoidance Actions, net of legal fees and associated costs, will be distributed Pro Rata to the holders of Allowed Unsecured Claims."

action against any Person on account of indebtedness and any other causes of action in favor of the Debtors *are hereby preserved and retained for enforcement subsequent to the Effective Date exclusively by Ampace Liquidating Trust.* (Plan § 14.1) (emphasis added). In addition, section 12.1 of the Plan further provides:

Subsequent to the Confirmation Date, the exclusive right to object to the allowance of any Claim is hereby reserved by Ampace Liquidating Trust. *Except as otherwise provided in Section 10.3*[4] *hereof, objections to Claims shall be filed by Ampace Liquidating Trust with the Bankruptcy Court not later than ninety (90) days after the Effective Date and served upon the holder of such Claim to which the Debtors have objected.* Unless otherwise ordered by the Bankruptcy Court, objections to Claims may be litigated to judgment, settled or withdrawn. Ampace Liquidating Trust, in consultation with the Creditors' Committee and in accordance with the terms of the Liquidating Trust Agreement, shall have the discretion to determine whether to prosecute objections to the allowance of any Claim.

(*Id.* at § 12.1) (emphasis added).

In addition to the inclusion of these provisions in the Plan, similar provisions were included in the Fourth Amended Disclosure Statement ("Disclosure Statement") (Doc. # 382, Case No. 98–2772), approved by Order (Doc. # 395, Case No. 98–2772) of this Court on October 29, 1999. With respect to the Trustee's ability to object to claims, the Disclosure Statement provides:

Prior to Confirmation, any party-in-interest shall have the right to object to the allowance of any Claim. Subsequent to the Confirmation Date Ampace Liquidating Trust will have the exclusive right to object to the allowance of any Claim. Such Objections, if any, shall be filed with the Bankruptcy Court no later than ninety (90) days after the Effective Date.

(Disclosure Statement § 3.11.1.) In addition, with respect to the Trustee's ability to pursue Avoidance Actions, the Disclosure Statement provides:

Except as previously waived or released, all *Avoidance Actions,* all Claims relating to Post–Petition transactions, all transfers recoverable under Section 550 of the Bankruptcy Code and all causes of action in favor of the Debtors *are preserved and retained for enforcement exclusively by Ampace Liquidating Trust subsequent to the Effective Date.* Proceeds recovered from such causes of action shall be distributed to Creditors in accordance with the provisions of the Plan.

(*Id.* at § 3.12.1) (emphasis added). The Disclosure Statement further provides:

Ampace Liquidating Trust will perform an analysis of potential Avoidance Actions and other causes of action. To the extent such actions are identified, Ampace Liquidating Trust may pursue such actions by informal demand and/or by the commencement of litigation. The net proceeds of such Avoidance Actions will be distributed to Creditors pursuant to the terms of the Plan. *The Statement of Financial Affairs (the "SOFAS") filed by the Debtors reflects aggregate payments to creditors during the ninety day period prior to the filing of the Debtors' bankruptcy petitions in the amount of approximately $7,320,908.*

---

4. Section 10.3 of the Plan deals with objections to claims for rejection damages and does not pertain to the instant dispute.

In addition, the SOFAS reflect aggregate payments made by the Debtors to insiders with [sic] the one year period prior to the filing of the Debtors' bankruptcy petitions of approximately $429,000. *The Debtors are currently undertaking an analysis of such payments to determine whether any of such payments may be avoidable pursuant to the provisions of the Bankruptcy Code. Thus far, the Debtors have identified potential preferential payments in the amount of $650,000 to LaSalle and $299,750 to First Finance.* There can be no assurance that any of such payments are avoidable.

(*Id.* at 16–17) (emphasis added).

Prior to the Confirmation Date, on January 27, 1999, Defendant filed six proofs of claim totaling $472,546.74 ("Claims"). (Def.'s Mem. (Doc. # 13) at 2.) Under the terms of the Plan, Defendant's Claims are deemed "allowed" in the absence of a timely objection by the Trustee.[5] Rather than object to Defendant's Claims prior to the March 14, 2000 deadline set forth in section 12.1 of the Plan ("Objections Deadline"), on March 14, 2000, the Trustee filed a motion seeking to extend the Objections

Deadline to May 12, 2000 pursuant to 11 U.S.C. § 105(a)[6] and Fed. R. Bankr.P. 9006(b)(1) ("Rule 9006(b)(1)")[7]. (*Id.;* Pl.'s Br. (Doc. # 15) at 4.) The Trustee's motion was granted and thereafter, the Trustee filed several additional motions (collectively, "Extension Motions") seeking further extensions of the Objections Deadline. (Pl.'s Br. (Doc. # 15) at 4.) Upon the filing of each of these motions, this Court entered orders granting the requested extension. (*Id.*) Each order was entered without prejudice to the right of any party to seek to shorten the period by which objections to claims may be filed. On November 8, 2001, the Trustee filed his Third Omnibus Objection (Doc. # 596, Case No. 98–2772) to Defendant's Claims, seeking to reduce certain allegedly overstated Claims to an allowed unsecured non-priority Claim in the amount of $350,120.14. On January 17, 2002, this Court entered an Order (Doc. # 612, Case No. 98–2772) granting the Trustee's Objection.

Prior to objecting to Defendant's Claims, on December 15, 2000, Plaintiff commenced the instant action against Defendant seeking: (i) to avoid allegedly preferential transfers ("Alleged Trans-

---

**5.** " 'Allowed Amount' means, with respect to a particular Claim...if the holder of such claim has filed a proof of Claim... the amount stated in such proof of Claim if no objection to or motion pursuant to Section 502(c)(1) ... has been interposed within the applicable period of limitation." (Plan § 1.3.) In addition, " 'Allowed Claim' means any Claim for which an Allowed Amount has been determined or which is otherwise allowed pursuant to this Plan." (*Id.* at § 1.4.)

**6.** Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any

determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

**7.** Fed. R. Bankr.P. 9006(b)(1) provides:

Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

fers") pursuant to 11 U.S.C. § 547(b)[8], and (ii) to recover an amount equal to such Alleged Transfers under 11 U.S.C. § 550[9]. (Complaint at 4.)[10] Defendant answered Plaintiff's complaint ("Complaint") on February 5, 2001 and the parties proceeded to conduct discovery. Thereafter, on September 27, 2001, Defendant filed its motion (Doc. # 13) for summary judgment.

## DISCUSSION

### I. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).[11] The moving party bears the initial responsibility of proving that no genuine issue of material fact is in dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968) (citing Fed.R.Civ.P. 56(e)). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, and must make all inferences in favor thereof. *See, e.g., Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Defendant argues that the Trustee's Extension Motions were ineffective and therefore, Defendant's Claims have been deemed "allowed" under the terms of the Plan. (Def.'s Mem. (Doc. # 13) at 3–4.) Defendant then contends that the fact that its Claims have been allowed entitles Defendant to judgment as a matter of law because: (1) the doctrine of *res judicata* bars the relitigation of the allowance and further treatment of Defendant's Claims

---

8. Section 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property-
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made-
 (A) on or within 90 days before the date of the filing of the petition; or
 (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
 (5) that enables such creditor to receive more than such creditor would receive if-
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

9. Section 550 provides:

Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from-
 (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
 (2) any immediate or mediate transferee of such initial transferee.

10. 11 U.S.C. §§ 101 *et seq.* is hereinafter referred to as " § ___."

11. Federal Rule of Civil Procedure 56(c) is applicable to contested matters in bankruptcy pursuant to Federal Rules of Bankruptcy Procedure 9014 and 7056.

(*id.* at 5–9); (2) the Trustee's predecessor in interest, the plan proponent, failed to disclose the existence of a preference claim against Defendant prior to confirmation of the Plan (*id.* at 11–12); and (3) § 502(d)[12] requires that summary judgment be granted because it would be inconsistent for Defendant to have an allowed claim of $472,546.74 *and* to have received $194,307.81 in avoidable preferential payments (*id.* at 10–11). Although Defendant has met its burden of demonstrating that no genuine issue of material fact is in dispute, *see Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. 2548, I nevertheless find that summary judgment is not proper because, based on the facts of this case, Defendant is not entitled to judgment as a matter of law.

## II. The Trustee's Extension Motions

■ Defendant first argues that the Trustee's Extension Motions were improperly brought pursuant to Rule 9006 because the Objections Deadline was established by the Confirmed Plan and not by the Bankruptcy Rules, a notice given thereunder, or an order of this Court. (Def.'s Mem. (Doc. #13) at 4–5.) As such, Defendant argues, any modifications to the Plan must comply with the notice and hearing requirements of § 1127(b)[13]. (*Id.*) Defendant argues that because the Extension Motions were brought without notice

and a hearing, they do not comply with § 1127(b) and therefore, they constitute ineffective unilateral, *ex parte* attempts to modify the confirmed Plan. (*Id.*) I agree.

Rule 9006(b)(1) provides that a court may, with or without motion or notice, order a specified time period enlarged when an act "is required or allowed to be done at or within [the] specified period *by these rules or by a notice given thereunder or by order of the court* ." Fed.R.Bankr.P. 9006(b)(1) (emphasis added). Thus, Defendant argues that a motion brought pursuant to Rule 9006 does not and cannot operate to modify the provisions of a confirmed plan. In fact, according to Defendant, unless otherwise provided in the terms thereof, a confirmed plan may only be modified after notice and a hearing pursuant to § 1127(b).

Plaintiff responds that § 1127(b) is inapplicable in this case because the Plan was incorporated by reference into the Confirmation Order and therefore, the initial Objections Deadline could be extended pursuant to Rule 9006. (Pl.'s Br. (Doc. #15) at 7–8.) In addition, Plaintiff also argues that even if the Objections Deadline had been established by the Plan, extending the deadline "was not of a substantive or material enough nature to" constitute a "modification" under § 1127(b). (Pl.'s Br.

---

**12.** Section 502(d) provides:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

**13.** Section 1127(b) provides:

The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

(Doc. # 15) at 6, 8.) I am not persuaded by Plaintiff's arguments.

First, the only reference to the Plan made in the Confirmation Order provides that "[a] copy of the confirmed plan is attached hereto as Exhibit 'A'." (Confirmation Order (Doc. # 429, Case No. 98–2772) at 1.) [14] Such language is insufficient to incorporate the Plan by reference into the Confirmation Order. As such, the Objections Deadline was established solely by the terms of the confirmed Plan and therefore, may only be modified in accordance with § 1127(b).[15]

■ In addition, to the extent Plaintiff argues that the Objections Deadline was not of a substantive or material enough nature to constitute a modification under § 1127(b), I disagree. Neither the Bankruptcy Code nor the Bankruptcy Rules provide for a time limit for filing objections to claims. *See* Fed.R.Bankr.P. 3007 [16]; *see also* 9 COLLIER ON BANKRUPTCY ¶ 3007.01[5] (15th ed.2001); *but see Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 553 (5th Cir.1985) (barring objection to secured claim filed after confirmation of chapter 13 plan and interpreting § 506(a)

to mean that if proof of a secured claim is not allowed or disallowed prior to confirmation, the claim must be deemed allowed for purposes of the plan). Nevertheless, in a chapter 11 case, the parties may choose to fix a time for filing objections to claims in the plan of reorganization. If, as here, the parties choose to do so, the resulting objections deadline, which is akin to a statute of limitations, certainly constitutes a substantive matter. *See Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir.1985) ("Federal courts sitting in diversity cases must apply the substantive laws of the states in which they sit, and statutes of limitations are considered substantive.") (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Witherow v. Firestone Tire and Rubber Co.*, 530 F.2d 160 (3d Cir.1976)).

In addition, although "modification" is not defined in the Bankruptcy Code, courts that have analyzed the issue of whether a subsequent change to a confirmed plan of reorganization constitutes a "modification" distinguish between the courts' inability to "modify" a plan and

---

**14.** The Confirmation Order (Doc. # 429, Case No. 98–2772) provides in its entirety:

The Fourth Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code filed by Ampace Corporation and Ampace Freightlines, Inc. and the Official Unsecured Creditors' Committee on October 26, 1999, and further modified on December 2, 1999, having been submitted to creditors and equity security holders; and

It having been determined after hearing on notice that the requirements for confirmation set forth in 11 U.S.C. § 1129 have been satisfied:

IT IS HEREBY ORDERED that:

The Fourth Amended Joint Plan of Reorganization of Ampace Corporation and Ampace Freightlines, Inc. and the Official Unsecured Creditors' Committee is confirmed.

A copy of the confirmed plan is attached hereto as Exhibit "A."

**15.** Indeed, Plaintiff fails to cite any authority to support the contention that such a statement would be sufficient to incorporate the Plan into the Confirmation Order.

**16.** Fed. R. Bankr.P. 3007 provides:

An objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.

their ability to "clarify a plan where it is silent or ambiguous", and/or " 'interpret' plan provisions to further equitable concerns." *See e.g., Beal Bank v. Jack's Marine, Inc.*, 201 B.R. 376, 380 (E.D.Pa.1996) (citing *United States for the Internal Revenue Service v. APT Indus., Inc.*, 128 B.R. 145, 146 (W.D.N.C.1991); *Terex Corp. v. Metro. Life Ins. Co.*, 984 F.2d 170, 173 (6th Cir.1993)); *see also Foulston v. Harness (In re Harness)*, 218 B.R. 163, 166 (D.Kan. 1998) (acknowledging that requiring payment of post-confirmation quarterly fees might be considered a violation of §§ 1127(b) and 1141, but finding that such expenses should not be considered a modification of the plan in order "to fulfill the intent of Congress and to harmonize the application of § 1930(a)(6) with [§§ 1127(b) and 1141]").[17] With regard to the instant dispute, there is nothing in the Plan for the Court in interpret or clarify. The Plan specifically provides that "objections to Claims shall be filed by Ampace Liquidating Trust with the Bankruptcy Court not later than ninety (90) days after the Effective Date." (Plan § 12.1.) This language clearly and unambiguously sets a time limit within which the Trustee could object to claims. Although in most confirmed chapter 11 plans a limitation such as this one is often followed by language providing that such limitation is "subject to being extended by the Bankruptcy Court upon motion of [Agent/Trustee/Committee] without notice or a hearing" (an "Extension Provision"), in this case it was not. Had section 12.1 of the Plan included such language, the Trustee could have unilaterally moved to extend the applicable deadline without notice and a hearing. Absent such language, unless the Plan is otherwise modified in accordance with § 1127(b), both parties are bound to the terms of the Plan and the Objections Deadline contained therein. *See* 11 U.S.C. § 1141(a)[18] (2001–2002); *see also First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enter.)*, 81 F.3d 1310, 1315 (4th Cir.1996) ("Pursuant to 11 U.S.C. § 1141(a), all parties are bound by the terms of a confirmed plan of reorganization."); *In re Sugarhouse Realty, Inc.*, 192 B.R. 355, 362 (E.D.Pa.1996) ("Confirmed bankruptcy plans of reorganization are binding contracts that must be interpreted in accordance with applicable contract law.").[19]

In light of the foregoing, I find that because the Objections Deadline was extended via motions filed pursuant to Rule 9006, and without prior notice and a hearing in accordance with § 1127(b), the orders granting such motions ineffective.[20]

---

17. In addition, "modification" is defined in *Black's Law Dictionary* as "[a] change to something" or "an alteration." BLACK'S LAW DICTIONARY 1020 (7th Ed.1999)

18. Section 1141(a) provides:

Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and *whether or not such creditor, equity security holder, or gen-*

*eral partner has accepted the plan.* (emphasis added).

19. Furthermore, § 1127(a) does not distinguish between substantive and non-substantive modifications or address the issue of materiality. Rather, § 1127(a) expressly provides that a plan, as modified under § 1127, becomes *the* plan only if circumstances so warrant and the court confirms such plan after notice and a hearing. Here, the modifications took place absent the requisite notice and hearing and therefore, they are ineffective.

20. Plaintiff also argues that if the Court deemed the procedure by which Plaintiff sought to extend the Objections Deadline to

As such, the original Objections Deadline of March 14, 2000 remained unaltered and the Trustee's failure to object to Defendant's Claims on or before that deadline resulted in such Claims, totaling $472,546.74, being "allowed" pursuant to the terms of the Plan.[21] *See* Plan §§ 1.3, 1.4, 12.1. However, as discussed below at Parts II.B. and II.C. of this Opinion, this finding does not aid Defendant in its *res judicata* and § 502(d) arguments.

### A. *Res Judicata* as a Bar to the Instant Action

■ Defendant next argues that because the issue of whether its Claim are allowed has already been decided, the instant action, related thereto, is barred by the doctrine of *res judicata.* (Def.'s Mem. (Doc. # 13) at 5–9.) I disagree.

■ The doctrine of *res judicata* (or claim preclusion) precludes a party from relitigating claims that were *or* could have been asserted in a prior action. For the doctrine of *res judicata* to apply, three factors must be present: (1) a final judgment on the merits, rendered by a court of competent jurisdiction, in a prior action involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same cause of action. *E.g., CoreStates Bank, N.A. v. Huls America, Inc.,* 176 F.3d 187, 194 (3d Cir.1999); *In re Mariner*

*Post–Acute Network, Inc.,* 267 B.R. 46, 52 (Bankr.D.Del.2001).

■ In the context of bankruptcy, most courts find that a confirmation order constitutes a final judgment on the merits with respect to the issues addressed in the plan of reorganization. *See, e.g., Eastern Minerals & Chemicals Co. v. Mahan,* 225 F.3d 330, 336, n. 11 (3d Cir.2000); *Donaldson v. Bernstein,* 104 F.3d 547, 554 (3d Cir.1997); *In re Varat Enter.* 81 F.3d at 1315; *Heritage Hotel Ltd. P'Ship I v. Valley Bank of Nevada (In re Heritage Hotel P'Ship I),* 160 B.R. 374, 377 (9th Cir. BAP 1993). In addition, "[a] party for the purposes of former adjudication includes one who participates in a Chapter 11 plan confirmation proceeding." *In re Varat Enter.,* 81 F.3d at 1315; *see also CoreStates,* 176 F.3d at 195 ("We believe . . . that claim preclusion should apply regardless of the jurisdictional basis of the present claim and between all parties to a bankruptcy case.") With respect to whether a subsequent action is based on a cause of action that was or could have been addressed in a prior proceeding, relevant case law suggests that courts in the Third Circuit consider whether there is an "essential similarity of the underlying events" giving rise to the claims. *Eastern Minerals,* 225 F.3d at 337 (citing *United States v. Athlone Indus., Inc.,* 746 F.2d 977, 984 (3d

---

be improper, it could have exercised its discretion to limit or deny the extension. (Pl.'s Br. (Doc. # 15) at 8.) I find this argument unpersuasive. The Court signed the orders granting the Trustee's Extension Motions in error. Because these types of extension motions are submitted to the Court for approval on a routine basis, the Court granted the Trustee's requests based on the assumption that the Plan, like most plans, included language providing that the Objections Deadline was subject to being extended by the Bankruptcy Court upon motion of the Liquidating Trustee without notice or a hearing. Given that the language in § 1127(b) provides that a

modified plan "becomes the plan only if . . . the court, *after notice and a hearing,* confirms such plan as modified," 11 U.S.C. § 1127(b) (emphasis added), as a matter of law, the orders granting the Trustee's Extension Motions are ineffective. *See* discussion *infra,* Part II.A.

**21.** As noted above, *see* discussion ·*supra,* p. 149, pursuant to the Trustee's Third Omnibus Objection, the Defendant's Claim was reduced to $350,120.14. Presumably, Defendant can obtain relief pursuant to Rule 3008 to have the Court reconsider the Claim allowance.

Cir.1984)); *CoreStates*, 176 F.3d at 200. However, in *Eastern Minerals*, the Third Circuit recently recognized that "the 'essential similarity' test, when literally construed, is ideally suited for litigation that has been generated by discrete events" and not for litigation arising in the context of bankruptcy. 225 F.3d at 337. In that case, a creditor commenced an alter ego action against a former chapter 11 debtor's sole shareholder in state court seeking to recover a portion of a settled claim that remained unpaid after the debtor's bankruptcy case was closed. *Id.* at 333. In finding that the doctrine of *res judicata* did not bar the creditor's alter ego claim, the Third Circuit stated:

> Claim preclusion doctrine must be properly tailored to the unique circumstances that arise when the previous litigation took place in the context of a bankruptcy case. Difficult as it may be to define the contours of a cause of action in a bankruptcy setting, we conclude that a claim should not be barred unless the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum.

*Id.* at 337–38; *accord In re Mariner*, 267 B.R. at 53–54.[22]

In the instant action, I find that the first two factors needed for application of doctrine of *res judicata* are present. The Confirmation Order constitutes a final judgment on the merits with respect to all issues addressed in the Plan. *See, e.g., Donaldson*, 104 F.3d at 554; *In re Varat Enter.*, 81 F.3d at 1315. In addition, both Plaintiff and Defendant and/or their predecessors in interest participated in the Plan confirmation proceeding. *See CoreStates*, 176 F.3d at 195; *see also In re Varat Enter.*, 81 F.3d at 1315. However, with respect to the third factor, based on the Third Circuit's decision in *Eastern Minerals*, I find that the instant action and the confirmation proceeding do not involve the same cause of action and therefore, the doctrine of *res judicata* does not apply. The factual underpinnings, the theory of this action, and the relief sought herein are not "so close" to the issue of the allowance of Defendant's Claims that it is unreasonable that this action was not commenced prior to or in connection with the confirmation proceeding. *See Eastern Minerals*, 225 F.3d at 337–38. Whereas the prior "action" involved an allowance of Defendant's Claims in Debtors' bankruptcy case, the instant adversary proceeding seeks avoidance of the Alleged Transfers pursuant to §§ 547 and 550. Although both actions may share some facts in common in that they both arose out of Defendant's pre-petition business relationship with Debtors, both the "factual underpinnings" and "theory of" an avoidance action are completely different than a determination on the allowability of a creditor's claim. As such, the instant proceeding involves an entirely different cause of action than the prior confirmation hearing and therefore, *res judicata* does not apply.[23]

---

**22.** Most other courts apply a "transactional test" when analyzing the third factor. The "transactional test" asks whether the two actions are based on the "same nucleus of operative facts." *See, e.g., In re Varat Enter.*, 81 F.3d at 1316; *Kelley v. South Bay Bank (In re Kelley)*, 199 B.R. 698, 702 (9th Cir. BAP 1996); *Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736, 743 (5th Cir.1993); *Eubanks v. Fed. Deposit Ins. Corp. ("FDIC")*, 977 F.2d 166, 171 (5th Cir.1992); *Mickey's Enter., Inc. v. Saturday Sales, Inc. (In re Mickey's Enter., Inc.)*, 165 B.R. 188, 192 (Bankr. W.D.Tex.1994).

**23.** In fact, in its memorandum in support of its motion for summary judgment, Defendant seems to acknowledge that the two actions

Moreover, even if the instant action did involve the same cause of action as the prior proceeding, most courts hold that even where there is an identity of claims, where a disclosure statement and/or plan of reorganization expressly reserves an action for later adjudication, *res judicata* does not apply. *See, e.g., D & K Prop. Crystal Lake v. Mutual Life Ins. Co. of New York,* 112 F.3d 257, 259–60 (7th Cir. 1997); *Kelley,* 199 B.R. at 704 ("If a confirmed plan expressly reserves the right to litigate a specific cause of action after confirmation, then res judicata does not apply."); *In re Am. Preferred Prescription, Inc.,* 266 B.R. 273, 277 (E.D.N.Y.2000) ("The case law, however, recognizes an exception to the res judicata bar where the debtor has reserved the right to object to claims in a plan."). In the instant action, as discussed below, both the Disclosure Statement and the Plan expressly reserved the Trustee's right to pursue avoidance actions. (Disclosure Statement at 16–17, § 13.2.1; Plan §§ 8.2.4, 8.8., 14.1.) There-

fore, even if the instant action did involve the same cause of action as the prior confirmation hearing, which it does not, the doctrine of *res judicata* would still not apply. *See* discussion *infra,* Part II.C.[24]

### B. Preservation of the Instant Action in the Disclosure Statement and Plan

■ Defendant does not dispute that where a disclosure statement expressly reserves an action for later adjudication, *res judicata* does not apply. However, Defendant contends that such a reservation must specifically disclose the proposed subsequent action against the particular defendant. (Def.'s Mem. (Doc. # 13) at 11–12.) Defendant argues that because here, the Disclosure Statement contained only a general reservation of avoidance actions and did not *specifically* disclose the Trustee's instant action against Defendant, the instant action was inadequately preserved. (*Id.*) I disagree.[25]

---

involve different legal theories and states that "[d]espite the various legal theories and/or causes of action that may arise from the parties' pre-petition relationship, the underlying facts that give rise to these legal theories and /or causes of action remain the same." (Def.'s Mem. (Doc. # 13) at 9.) Thus, Defendant seems to base its entire argument that two actions involve the same cause of action on the fact that similar facts and/or underlying events gave rise to both the proceeding in the prior confirmation hearing and the instant preference action. Although Defendant cites numerous cases in support of its argument (*See id.* at 8–9; Def.'s Reply (Doc. # 16) at 13–15), these cases are inapposite. First, with the exception of *CoreStates,* decided prior to *Eastern Minerals,* none of the cases cited by Defendant arose from the Third Circuit. *See generally, Baudoin,* 981 F.2d 736; *Eubanks,* 977 F.2d 166; *Mickey's Enterprises,* 165 B.R. 188. As such, this Court is not bound by those decisions. In addition, none of the cases cited by Defendant, including *CoreStates,* applies the test set forth by the Third Circuit in *Eastern Minerals. See CoreStates,* 176 F.3d at 200 (scrutinizing the totality

of circumstances in each action and then determining whether the "essential similarity of the underlying events" test is satisfied); *Baudoin,* 981 F.2d at 743 (applying "transactional test"); *Eubanks,* 977 F.2d at 171 (same); *Mickey's Enterprises,* 165 B.R. at 192 (same). Therefore, they are inapplicable.

24. In addition, at least one court has found that a preference action is not one that "could have been brought at the same time as" a prior confirmation hearing for the purposes of *res judicata* because the confirmation process constitutes a contested matter under the Bankruptcy Rules, whereas a preference action must be commenced as an adversary proceeding under Fed. R. Bankr.P. 7001. *See Sunrise Energy Co. v. Maxus Gas Mktg. (In re Sunpacific Energy Mgmt., Inc.),* 216 B.R. 776, 779 (Bankr.N.D.Tex.1997).

25. As a preliminary matter, it is important to recognize that in finding that the doctrine of *res judicata* does not apply, *see* discussion *supra,* Part II.B., I have already disposed of Defendant's argument that the instant action

Section 1123 governs the contents of a plan and provides in pertinent part:

> (b) Subject to subsection (a) of this section, a plan may-
>
> \* \* \* \* \* \*
>
> (3) provide for-
>
> (A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or
>
> (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest;

11 U.S.C. § 1123(b)(3) (emphasis added). The courts are divided on how specific the

language of retention and enforcement must be under § 1123(b)(3)(B) to adequately reserve a cause of action for adjudication at a later date. *In re Goodman Bros. Steel Drum Co., Inc.*, 247 B.R. 604, 607 (Bankr.E.D.N.Y.2000).

In support of its argument that the instant action was *not* adequately preserved, Defendant cites the "adequate disclosure" requirement of § 1125[26] and *Mickey's Enterprises, supra*, n. 22, a case in which the court held that a debtor's preference action was barred under the doctrine of *res judicata* by confirmation of debtor's chapter 11 plan of reorganization. 165 B.R. at 193–94.[27] In that case, the debtor com-

---

was not adequately preserved. This is because while some courts consider this argument in determining whether there was a final judgment on the merits in the prior proceeding, others seem to view it as an exception to the doctrine of *res judicata* that is available to the plaintiff in the event that the doctrine does apply, *see, e.g., D & K Properties*, 112 F.3d at 259–60; *Kelley*, 199 B.R. at 704; *Am. Preferred Prescription*, 266 B.R. at 277. Nevertheless, because Defendant has raised the argument as an independent defense against the Trustee's action, I address the argument separately.

26. Section 1125 governs the contents of a disclosure statement and provides that acceptance or rejection of a plan may not be solicited until each holder of a claim or interest receives the plan or a summary thereof, "and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). "Adequate information" is defined in § 1125(a)(1) as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan.

*Id.* § 1125(a)(1).

27. Defendant also cites *Westland Oil Dev. Corp. v. MCorp Mgmt. Solutions, Inc. v. FDIC*, 157 B.R. 100, 103–04 (S.D.Tex.1993) (holding confirmation of debtor's chapter 11 plan barred debtor from subsequently asserting breach of contract and fraud claims against creditor because, in part, the general retention clauses in debtor's disclosure statement and plan failed to adequately disclose the present action) and *In re Metrocraft Publ'g. Serv., Inc.*, 39 B.R. 567, 570–71 (Bankr. N.D.Ga.1984) (denying chapter 11 debtor's application for approval of disclosure statement where it failed to include information concerning any potential claims that might exist between debtor and affiliate). These cases are inapposite. In *Westland Oil*, the plan merely reserved "any and all causes of action which [debtor] may have whether arising prior to or after the Petition Date." 157 B.R. at 103. Here, both the Disclosure Statement and Plan specifically reserve the Trustee's right to pursue "Avoidance Actions." (Disclosure Statement § 3.12.1, at 16–17; Plan § 14.1.) In addition, in *Metrocraft*, the court stated:

> Admittedly, the precise amount of such preferential transfers cannot be stated prior to this Court's determination on such claims. Nevertheless, the debtor is not excused from discussing the amount of preferences *in approximate terms and setting forth what steps have been taken toward settling or litigating these claims.*

menced its preference action against the defendant-creditor after the bar date for filing claims had passed. *Id.* at 191. The defendant, who had not filed a proof of claim, argued that the action was barred by confirmation of the debtor's· plan under the doctrine of *res judicata. Id.* at 192. In response, the debtor argued that the defense of *res judicata* was not available because the defendant's claim was not specifically treated in the plan. *Id.* In ruling in favor of the defendant, the court found that the reason the defendant had not filed a proof of claim was because the debtor's statement of affairs, disclosure statement and plan failed to disclose any potential claims or causes of action against the defendant. *Id.* at 193. In addition, the court also found that the defendant would not have been "willing to simply walk away" "had it known about the Debtor's preference claim and its intention to pursue the same." *Mickey's Enterprises,* 165 B.R. at 193. In light these findings, the court then concluded that the debtor's disclosure statement, which "contained only a general retention clause which failed to specifically identify any § 547 causes of action" against the defendant, was inadequate. *Id.* at 193, 194.

Although many courts adopt the rationale of *Mickey's Enterprises* and hold that *res judicata* bars a subsequent action unless the debtor's disclosure statement and/or plan specifically reserves the right to litigate that specific claim [28], as the court stated in *In re Weidel,* 208 B.R. 848 (Bankr.M.D.N.C.1997), "[s]everal reasons exist for departing from the holding of *Mickey's Enterprises* and like cases." *Id.* at 852.

■ First, § 1123 distinguishes between what a plan must include and what a plan may include. *See* 11 U.S.C. § 1123. While a plan *may* provide for the retention of certain causes of action by the debtor and/or its representatives, there is no *requirement* that it do so. *See id.* § 1123(b)(3)(B). In addition, even if the language in § 1123(b)(3)(B) could be construed as containing such a requirement, there is nothing in the provision to suggest that the plan must specifically identify each and every claim and/or interest belonging to the debtor that may be subject to retention and enforcement. *See id.; see also P.A. Bergner & Co. v. Bank One, Milwaukee, N.A. (Matter of P.A. Bergner*

---

39 B.R. at 570–71. Not only is this discussion not the equivalent of a holding that the disclosure of avoidance actions in a disclosure statement must name each of every potential defendant thereof, but also, I find that in the instant action, the Disclosure Statement did discuss "the amount of preferences in approximate terms" and set forth the steps that have been and would be taken toward investigating and litigating such preferences. (*See* Disclosure Statement § 3.12.1, at 16–17.)

**28.** *See, e.g., D & K Properties,* 112 F.3d at 260 (affirming district court's holding that breach of contract action filed post-confirmation was barred under the doctrine of *res judicata* where confirmed plan included only "a blanket reservation lacking the specificity necessary to reserve a cause of action"); *Kelley,* 199 B.R. at 704 ("Even a blanket reservation by the debtor reserving 'all causes of action

which the debtor may choose to institute' has been held insufficient to prevent the application of res judicata to a specific action."); *Am. Preferred Prescription,* 266 B.R. at 279 (finding general reservation in plan to be "insufficient to escape the res judicata bar"); *Matter of Huntsville Small Engines, Inc.,* 228 B.R. 9, 13 (Bankr.N.D.Ala.1998) (finding preference action precluded by plan confirmation under doctrine of *res judicata* where plan and disclosure statement "only contained a general retention clause reserving the debtor's right to pursue post-confirmation all pre-petition causes of action without specifically disclosing the cause of action against [creditor]."); *Westland Oil,* 157 B.R. at 103 ("[Debtor] knew about the claim, was mad about it, and hid it within the murky language of the general retention clause.").

*& Co.),* 140 F.3d 1111, 1117 (7th Cir.1998) ("While there might be some logic in requiring 'specific and unequivocal' language to preserve claims belonging to the estate that have never been raised, the statute itself contains no such requirement.").

 Second, the confirmation process is expedited by allowing debtors to include a general reservation of their right to pursue certain causes of action at a later date. *In re Weidel,* 208 B.R. at 853; *see also Amarex, Inc. v. Marathon Oil Co. v. Aztec Specialty Leasing Co. (In re Amarex, Inc.),* 74 B.R. 378, 380 (Bankr.W.D.Okla. 1987) (addressing issue of whether successor to the reorganized debtor may maintain complaints to recover preferential transfers under § 547). In my opinion, it is both impractical and unnecessary for a Disclosure Statement and/or Plan to list each and every possible defendant against which a debtor or its representative may bring an avoidance action. As the court stated in *Amarex, Inc.:*

> § 1123(b)(3)(B) serves the useful function of allowing confirmation of a plan before possible claims against others have been fully investigated and pursued. To say confirmation must await a final decision of all possible preference complaints would either inordinately delay confirmation, with all the attendant expense, or result in a windfall in favor of those who received preferential transfers.

74 B.R. at 380. Indeed, in large chapter 11 cases, the investigation and litigation of all possible avoidance actions to final judgment can take years. To force the debtor to remain in bankruptcy until a final determination of all possible preference actions is made would act as a detriment to both the debtor and its creditors by slowing down the reorganization process. In most of the large chapter 11 cases in this Court, the plan of reorganization and/or liqui-

dation is often confirmed before the debtor and/or a trustee has undertaken a detailed investigation of the potential preference actions. In large Chapter 11 cases there may be hundreds or even thousands of transaction within the 90–day period and considerable time and effort is needed to examine those transactions in light of the numerous defenses provided for in § 547(c). More often than not, it is appropriate to delay that undertaking until after plan confirmation. For example, in *In re Ameriserve Food Distribution, Inc., et al.,* 267 B.R. 668 (D.Del.2001), confirmed on November 28, 2000, 874 preference actions were filed. Each of these actions was filed on or subsequent to March 13, 2001. Similarly, in *In re APF, Co.* (Case No. 98–01596(PJW)), confirmed on May 27, 1999, a total of 86 preference actions were filed, each subsequent to the confirmation date. Likewise, in *In re APS Holding Corp.* (Case No. 98–00197(PJW)), confirmed on October 19, 1999, a total of 95 preference actions were filed, all subsequent to the confirmation date. In each of these case, both the plan and disclosure statement contained general reservations similar to those at issue here. They did not specify each and every potential creditor against whom an avoidance action might conceivably be filed. Rather, they preserved the applicable party's general right to pursue "avoidance actions" or "preference actions" post-confirmation, specifying only those particular potential defendants of which they were aware at the time. Similarly, in the instant action, both the Plan and Disclosure Statement expressly provided that "all Avoidance Actions... are preserved and retained for enforcement exclusively by Ampace Liquidating Trust subsequent to the Effective Date" (Disclosure Statement § 3.12.1; *see also* Plan § 14.1.) This statement clearly evinces the plan proponents' intent to preserve the right to pursue and enforce preference actions for the

Trustee and as such, satisfies the statutory requirements of both §§ 1123(b)(3) and 1125. In addition, the Disclosure Statement disclosed that Debtors estimated preferential transfers to be approximately $7,320,908 and further provided:

> The Debtors are currently undertaking an analysis of such payments to determine whether any of such payments may be avoidable pursuant to the provisions of the Bankruptcy Code. Thus far, the Debtors have identified potential preferential payments in the amount of $650,000 to LaSalle and $299,750 to First Finance.

(Disclosure Statement at 16–17.) Despite Defendant's argument to the contrary, the fact that this paragraph specifically references alleged preferential payments to LaSalle and First Finance does not bar the Trustee from commencing the preference actions against others, including Defendant. Not only does this paragraph specifically provide that "Debtors are *currently* undertaking an analysis of such payments to determine whether any of such payments may be avoidable," but also, the disclosure of the alleged preferential transfers to LaSalle and First Finance are preceded by the words "Thus far, the Debtors have identified..." Thus, the Disclosure Statement provided Defendant with "adequate information" that at the time, Debtors were still in the process investigating potential transfers, that they estimated such transfers to be over $7 million, and that "thus far", they had determined that approximately $950,000 of the estimated $7 million in preferential transfers had been made to LaSalle and First Finance. Having received this information, and knowing that it received a payment from Debtors within the ninety day preference period, Defendant was on notice that an Avoidance Action might subsequently be filed against it.

Third, as discussed above, a confirmed plan acts as a binding contract on all the parties thereto. *See* 11 U.S.C. § 1141(a); *see also In re Varat Enter.*, 81 F.3d at 1315; *Sugarhouse Realty*, 192 B.R. at 362. Prior to a plan's confirmation, creditors have the opportunity to examine the terms of the proposed plan and respond accordingly. In the instant action, Defendant received notice of and had the opportunity to object to the both the Plan and Disclosure Statement. In particular, Defendant had multiple opportunities to object to the Plan's reservation of the Trustee's right to pursue Avoidance Actions post-confirmation. However, Defendant did not do so. Accordingly, pursuant to § 1141(a), Defendant is now bound by the terms of the Plan, and as such, is precluded from objecting to those provisions reserving the Trustee's right to pursue Avoidance Actions post-confirmation. *See Weidel*, 208 B.R. at 852–53. To the extent Defendant argues that it failed to object to the Plan because the information provided with respect to the instant action in the Disclosure Statement was inadequate, I find this argument to be unpersuasive. First, the Court has already entered an Order (Doc. # 395, Case No. 98–2772) approving the Disclosure Statement as containing adequate information in accordance with § 1125. Second, while it is true that some courts view § 1123(b)(3) as, at least in part, a notice provision, *see Harstad v. First Am. Bank*, 39 F.3d 898, 903 (8th Cir.1994), the Bankruptcy Code contemplates that debtors may seek confirmation of their plans prior to litigating all avoidance actions. *Sunrise Energy Co.*, 216 B.R. at 779. Therefore, in my opinion, a general reservation in a plan of reorganization indicating the *type* or category of claims to be preserved should be sufficiently specific to provide creditors with notice that their claims may be challenged post-confirmation. *See, e.g., Bergner*, 140

F.3d at 1117 ("The courts that have spoken of the need for 'specific' and 'unequivocal' language have focused on the requirement that plans unequivocally retain claims of a given type, not on any rule that individual claims must be listed specifically.") (citing *Harstad,* 155 B.R. 500, 510 (Bankr.D.Minn. 1993); *In re Mako,* 120 B.R. 203, 209 (Bankr.E.D.Okla.1990)); *Goodman Bros.,* 247 B.R. at 609 ("The court's examination of the text of § 1123(b)(3) lead [sic] it to the conclusion that the statute does not contain a requirement that the language of a plan be 'specific and unequivocal.'"). The same rationale applies equally to the information provided with respect to the reservation of actions contained in disclosure statements because such a general reservation is sufficient to "enable a hypothetical reasonable investor... to make an informed judgment about the plan," thereby satisfying the disclosure requirements of § 1125. 11 U.S.C. § 1125(a)(1); *see also Media Vision Tech., Inc. v. Ernst & Young, L.L.P. (In re Media Vision Tech., Inc.),* 1997 WL 102469, *6 (N.D.Cal. Feb.27, 1997) ("The Disclosure Statement clearly refers to claims against professionals, a category that indisputably includes [defendant], and clearly assigns those claims to the [committee]. Although the [committee] did not immediately bring suit against [defendant], the Disclosure Statement clearly indicated there was a possibility that it would do so."). Furthermore, with respect to those creditors who are the potential targets of a preference action, such creditors know, or should know, whether or not they received a payment from the debtor within the ninety days preceding the petition date. As such, when a plan or disclosure statement contains a general reservation of a trustee's right to pursue "preference actions" or "avoidance actions" post-confirmation, those creditors also know that there is a possibility that they may be the target of

one of those actions. Such is the case here. Defendant knew or should have known that it received a payment from Debtors within the preference period. Both the Disclosure Statement and Plan contain a clear statement of the Trust's retention of the right to pursue Avoidance Actions post-confirmation. Therefore, Defendant knew or should have known that the Trustee could have commenced the instant action post-confirmation and as such, Defendant cannot now claim that such action is barred.

Therefore, for the reasons discussed above, I reject the rationale of *Mickey's Enterprises* and like cases and choose to follow those courts which hold that a subsequent action is *not* barred by a prior confirmation hearing under the doctrine of *res judicata* where the disclosure statement and plan contain a *general* reservation of the right to pursue preference actions post-confirmation. *See Weidel,* 208 B.R. at 853–54 (holding that res judicata did not bar debtors' objection to creditor's claim where the plan expressly reserved the general right to assert post-confirmation objections to claims); *see also Envirodyne Indus., Inc. v. Conn. Mutual Life Co. (In re Envirodyne Indus., Inc.),* 174 B.R. 986, 991 (Bankr.N.D.Ill.1994) (finding that debtor was not barred from bringing proceedings against petitioning bondholders under the doctrine of *res judicata* based on debtor's failure to explicitly reveal its potential claims in its disclosure statement); *In re Outdoor Sports Headquarters, Inc.,* 168 B.R. 177, 183 (Bankr. S.D.Ohio 1994) (finding that *res judicata* did not bar unsecured creditor's objection to larger creditor's claim where neither the debtor's disclosure statement or plan contained any provision pertaining to the allowance or disallowance or suggesting or requiring that the action of any creditor be

brought against any other, including defendant).[29]

## C. Section 502(d)

■ Defendant also argues that the instant action is barred by § 502(d). (Def.'s Mem. (Doc. # 13) at 10.) Defendant contends that because § 502(d) requires the disallowance of all claims of an entity which has received preferential transfers, once an entity's claim has been allowed, such entity is deemed to have previously disgorged any avoidable transfers. (*Id.*) Defendant argues that because its Claims have been allowed under the terms of the Plan, pursuant to § 502(d), Defendant cannot be found to have received any disgorgeable, but not yet disgorged preferences. (*Id.*) I find this argument to be unpersuasive.[30]

Under § 502(a) "a claim . . . is deemed allowed, unless a party in interest. . . objects." In the instant case, pursuant to the terms of the Plan, Defendant's Claims were deemed "allowed" upon the Trustee's failure to object to such Claims prior to the Objections Deadline. *See* discussion *supra*, Part II.A. Although Defendant argues that this fact alone bars the instant action because allowing the Trustee's preference action to proceed would be inconsistent with § 502(d) (Def.'s Mem. (Doc. # 13) at 10), I find this argument to be inconsistent with both the plain language and purpose of the statute.

The claims allowance/disallowance process under § 502 is specific and clear. Section 502(a) provides that a claim is deemed allowed unless a party in interest (obviously including the debtor) objects. Section 502(b) then provides that if such an objection to a claim is made, the Court, on notice and a hearing, will determine the amount of the claim. Subpart (b) then goes on to specify types of claims that are not allowed or that are subject to limitations in amount. Section 502(d) provides that "[n]otwithstanding subsections (a) and (b)," "the court shall disallow any claim of any entity" that has received preferential transfers. 11 U.S.C. § 502(d). Thus, "[n]otwithstanding" the fact that a claim may be deemed allowed pursuant to § 502(a) by the absence of an objection or a hearing on notice pursuant to § 502(b),

---

29. Although the Disclosure Statement and Plan in this case contains language sufficient to find that there was an express reservation of rights to pursue avoidance action, I would observe that in other large Chapter 11 cases, that reservation of rights often includes an express negation of the doctrine of *res judicata*. For example, in the plan of *Ameriserve Food Distribution, Inc., et al.* (Doc. # 2599, Case Nos. 00–358, 00–373 through 00–385), the reservation of rights language reads, in part, as follows:

> Unless Bankruptcy Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or any Final Order, the Debtors expressly reserve all Bankruptcy Causes of Action and Unknown Causes of Action, including the Bankruptcy Causes of Action described herein, as well as any other Bankruptcy Causes of Action or Unknown Causes of Action, for later adjudication *and, therefore, no preclusion*

> *doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Bankruptcy Causes of Action upon or after the confirmation or consummation of the Plan.*

(*Id.* at 34) (emphasis added).

30. In support of its argument, Defendant cites *D & K Prop. Crystal Lake v. Mutual Life Ins. Co. of N.Y.*, 112 F.3d 257 (7th Cir.1997); *Kelley v. South Bay Bank*, 199 B.R. 698 (9th Cir. BAP 1996); *Laing v. Johnson*, 31 F.3d 1050 (10th Cir.1994); *Bank of Lafayette v. Baudoin*, 981 F.2d 736 (5th Cir.1993). However, these cases are inapposite. Although the courts in each of these cases found that a subsequent action was barred under the doctrine of res judicata, none based their decision on the § 502(d) argument set forth by Defendant.

§ 502(d) states that *the Court shall* disallow a claim if the claimant is found to have received a preferential transfer under § 547, or property that is recoverable under § 550. *See id.* This requirement is not qualified or limited by the provisions of § 502(a) and (b). The only conditions contained in § 502(d) are: (1) a claimant is found to have received preferential transfers pursuant to § 547 or property recoverable pursuant to § 550, and (2) a claimant has not "paid the amount, or turned over any such property, for which [it] is liable" under § 550. *Id.* Thus, the fact that the Trustee has failed to object to Defendant's Claims, and that Defendant's Claims have been "allowed" under the terms of the Plan is irrelevant for the purposes of § 502(d).

The fallacy of Defendant's argument is easily illustrated by the situation where there is no valid basis for objecting to a claim made by a claimant who received a preference. No party in interest would file a § 502(a) objection to such a claim, but, according to Defendant, a preference action could not be brought no matter what its merits. This result is precluded by the provisions of § 502(d) which automatically holds up the allowance of a claim pending the preference determination.

In addition, " § 502(d) is 'intended to have the coercive effect of ensuring compliance with judicial orders.' " *In re Odom Antennas, Inc.*, 258 B.R. 376, 383 (Bankr. E.D.Ark.2001) (citing *Campbell v. United States*, 889 F.2d 658, 661 (5th Cir.1989)); *see also* 4 COLLIER ON BANKRUPTCY ¶ 502.05 (15th Ed.2001). However, in the instant action, there is not yet a judicial order requiring the turnover of property. As such, § 502(d) has not yet become operative, *see Seta Corp. of Boca, Inc. v. Atl. Computer Sys. (In re Atl. Computer Sys.)*, 173 B.R. 858, 862 (S.D.N.Y.1994); *Odom*, 258 B.R. at 383; *In re Chase & Sanborn*

*Corp.*, 124 B.R. 368, 370 (Bankr.S.D.Fla. 1991); *Mktg Res. Int'l Corp. v. PTC Corp. (In re Mktg. Res. Int'l Corp.)*, 35 B.R. 353, 356 (Bankr.E.D.Pa.1984), and therefore, it cannot be used by Defendant as a preemptive strike against Plaintiff's avoidance action.

## CONCLUSION

For the reasons discussed above, Defendant's motion (Doc. # 13) for summary judgment is denied.